Fernando HERNANDEZ, as next friend of Katherine E. Hernandez Plaintiff,

v.

ATTENTION, LLC d/b/a Attention Card Services, Inc. Defendants.

No. 04 C 3834.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 28, 2005.

Daniel A. Edelman, James O. Latturner, Michelle R. Teggelaar, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL, for Plaintiff.

David M. Schultz, Todd Philip Stelter, Hinshaw & Culbertson, Chicago, IL, for Defendants.

## ORDER

GOTTSCHALL, District Judge.

On June 4, 2004, plaintiff Fernando Hernandez filed his single-count class action complaint claiming that defendant Attention, LLC d/b/a Attention Card Services, Inc. ("Attention") violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e and § 1692g. Hernandez's claims under both sections rest on his allegations that a debt collection letter sent by Attention to Hernandez [1] is confusing as to Hernandez's rights to a cessation of collection activities for thirty days after the debtor requests debt validation under § 1692g(a)(3). *See also* 15 U.S.C. § 1692g(b) (specifying that debt collector shall cease collection efforts after receiving § 1692g(a)(3) notice until it has obtained verification of the debt or copy of judgment and mailed same to requesting debtor). Hernandez has also moved for class certification under Rule 23, Fed.R.Civ.P.

---

1. Fernando Hernandez is married to Katherine Hernandez, the individual who was the actual addressee of the collection letter at issue in this case. Mrs. Hernandez is disabled and unable to represent herself, and so has signed a limited power of attorney granting Mr. Hernandez authority to act on her behalf in this litigation in accordance with the Illinois Power of Attorney Act, 755 ILCS 45/1 *et seq.* Attention has not challenged the adequacy of this power of attorney, and the court will allow Mr. Hernandez to act on his wife's behalf. For purposes of convenience, the court refers to Mr. and Mrs. Hernandez collectively as "Hernandez."

Attention has moved for summary judgment pursuant to Rule 56. For the reasons described below, the court grants Attention's motion for summary judgment and denies Hernandez's motion for class certification as moot.

## Applicable Law

Section 1692g(a) of the FDCPA provides that a debt collector, such as Attention, must in its initial contact with a debtor (or within five days thereafter) provide the debtor with five pieces of information:

(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing-

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and

address of the original creditor, if different from the current creditor.[2]

■ Section 1692e of the FDCPA states in relevant part: "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Hernandez collapses his argument under sections 1692e and 1692g, using the same arguments to maintain that Attention's letter is confusing in violation of § 1692g and misleading in violation of § 1692e. Thus, the discussion and decision herein applies to Attention's alleged violations under both § 1692e and § 1692g. *Vasquez v. Gertler & Gertler, Ltd.*, 987 F.Supp. 652, 658 (N.D.Ill.1997).

## Background

On or about November 15, 2003, Attention sent to Hernandez the following letter, which was Attention's first communication in an attempt to collect a balance of $1152.37 that had accrued on Hernandez's "Aspire Visa" card account. The full text of the letter is:

The above referenced account has been turned over to our agency for collection. Our client indicated they have a valid claim against you, which is seriously delinquent. We expect to receive payment in full.

Your failure to remit the balance due will result in our agency continuing our collection efforts.

It is obviously beneficial for you to pay the balance to avoid further collection efforts. If you need to discuss this matter, call Card Services Inc. for assistance. For quality assurance purposes your telephone call may be monitored. This communication is from a debt collector. This is an attempt to collect a

---

**2.** The thirty-day period provided for in § 1692g(a)(3) is referred to herein as the "Validation Period," and this five-part notice is referred to as the "Validation Notice."

debt and any information obtained will be used for that purpose.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

The parties do not dispute that the letter contains the Validation Notice. In fact, the sole issue in this case is whether the statement "[y]our failure to remit the balance due will result in our agency continuing our collection efforts," causes confusion as to the debtor's rights. Hernandez claims that this statement is misleading and/or confusing "in that it tells the unsophisticated consumer that collection activity will continue during the validation period, notwithstanding the fact that the consumer timely disputes the debt, unless and until the debt is paid." (Plaint. Resp. at 1–2.)

### Analysis

■■■■ The notice required by § 1692g(a) must be set forth in a manner that would not be confusing to an "unsophisticated consumer." *Bartlett v. Heibl,* 128 F.3d 497, 500 (7th Cir.1997). The proverbial "unsophisticated consumer" is one who is of "below-average sophistication or intelligence," and is otherwise described as "uninformed, naive or trusting." *Gammon v. GC Servs. Ltd. P'ship,* 27 F.3d 1254, 1257 (7th Cir.1994). Where, as here,

it is clear that the Validation Notice has been provided, the debt collector still "may not overshadow or contradict that information [the Validation Notice] with other messages sent with the validation notice or within the validation period." *Avila v. Rubin,* 84 F.3d 222, 226 (7th Cir.1996).

■■■■ The unsophisticated consumer standard is subject to a reasonableness requirement that protects debt collectors from liability for unrealistic interpretations of collection letters. *Jang v. A.M. Miller & Assocs.,* 122 F.3d 480, 483–84 (7th Cir. 1997); *Gammon,* 27 F.3d at 1257 ("The reasonable element [of the unsophisticated consumer test] in turn shields complying debt collectors from liability for unrealistic or peculiar interpretations of collection letters.") Even the unsophisticated consumer is presumed to read "collection letters carefully so as to be sure of their content." *Pettit v. Retrieval Masters Creditors Bureau, Inc.,* 211 F.3d 1057, 1061 (7th Cir. 2000). As the Seventh Circuit has said, the FDCPA "is not violated by a dunning letter that is susceptible of an ingenious misreading, for then every dunning letter would violate it." *White v. Goodman,* 200 F.3d 1016, 1020 (7th Cir.2000). Put another way, "an unsophisticated consumer possesses 'rudimentary knowledge about the financial world' and is 'capable of making basic logical deductions and inferences.'" *Olson v. Risk Mgmt. Alternatives, Inc.,* 366 F.3d 509, 512 (7th Cir.2004) (affirming oral ruling granting summary judgment to debt collector).

■■■■ Courts may determine as a matter of law that a collection letter, on its face, violates the FDCPA. *Durkin v. Equifax Check Services, Inc.,* 406 F.3d 410, 415 (7th Cir.2005), citing *Avila,* 84 F.3d at 226. However, if the letter does not clearly violate the FDCPA, a debtor's unsupported claim that a letter is confusing is

not sufficient evidence for her claim to survive summary judgment. *Durkin*, 406 F.3d at 414–15, citing *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir.1999). "[W]hen the letter itself does not plainly reveal that it would be confusing to a significant fraction of the population, the plaintiff *must* come forward with evidence beyond the letter and beyond his own self-serving assertions that the letter is confusing in order to create a genuine issue of material fact for trial." *Durkin*, 406 F.3d at 415 (emphasis added), citing *Taylor v. Cavalry Inv., LLC*, 365 F.3d 572, 574–75 (7th Cir.2004); *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 948–49 (7th Cir.2004). This evidence must show that the contested language of the letter "unacceptably increases the level of confusion." *Durkin*, 406 F.3d at 415, quoting *Johnson*, 169 F.3d at 1060 (7th Cir.1999) (emphasis omitted). The Seventh Circuit has repeatedly mentioned consumer survey evidence, like that used in trademark cases, as an appropriate method of showing that a particular collection letter is confusing to the unsophisticated consumer. *Johnson*, 169 F.3d at 1060–61; *Pettit*, 211 F.3d at 1062; *Taylor*, 365 F.3d at 575.

Here, the language in the collection letter cannot reasonably be read to contradict the Validation Notice. The statement that "[y]our failure to remit the balance due will result in our agency continuing our collection efforts" is "the clear statement of a truism" such that even an unsophisticated debtor could not reasonably read it to create confusion as to the debtor's right to seek verification of the debt and be accorded cessation of debt collection activities under 1692g(b). *Taylor*, 365 F.3d at 575 (affirming dismissal where dunning letter contained only "the clear statement of a truism."). As the court in *Taylor* noted, "it is perfectly obvious to even the dimmest debtor that the debt collector would *very* much like him to pay the amount demanded straight off, sparing the debt collector any further expense." *Taylor*, at 575 (emphasis in original), citing *Renick v. Dun & Bradstreet Receivable Mgmt. Servs.*, 290 F.3d 1055, 1057 (9th Cir.2002) (parenthetical omitted), *Wilson v. Quadramed Corp.*, 225 F.3d 350, 360–61 n. 6 (3rd Cir.2000) ("avoid further action"), *Terran v. Kaplan*, 109 F.3d 1428, 1434 (9th Cir.1997). The debtor's entitlement to request verification of the debt is clearly stated on the same page as the complained-of statement, in the same text size and font, and there is no reasonable implication that the debt collector's simple statement that it intends to do its job conflicts with a debtor's right to verification of the debt. *Taylor*, at 575 (phrase "act now to satisfy your debt" held not confusing); *Olson*, 366 F.3d at 510 (affirming summary judgment because phrase "now due" in letter does not create confusion where Validation Notice is same size text on same side of paper as rest of letter). Furthermore, nothing in the letter demands payment or any other action in less than thirty days. *Vasquez v. Gertler & Gertler, Ltd.*, 987 F.Supp. 652, 657–58 (N.D.Ill.1997) (no FDCPA violation where "letter does not demand payment immediately or within any time period less than thirty days") (collecting cases); *Young v. Meyer & Njus, P.A.*, 953 F.Supp. 238, 240 (N.D.Ill.1997) (reasonableness element of unsophisticated consumer test shields collection letter requesting payment without stating time period).

To counteract the letter's facially non-confusing language, and as the Seventh Circuit has suggested, Hernandez's counsel commissioned a consumer survey (introduced in Hernandez's L.R. 56.1(b)(3)(B) statement of additional material facts) in an attempt to present evidence that the letter causes consumer confusion. However, Hernandez's argument that his survey

creates an issue of fact sufficient to deny Attention's summary judgment motion fails because Hernandez's survey is flawed and fails to evidence actual consumer confusion.

The survey's fatal flaw is that it did not make use of a control group. The Seventh Circuit has made clear that a consumer survey, to be useful in the FDCPA context, must have a control group or other method of controlling for the possibility that the statutory language, standing alone, would confuse survey participants: "A survey (or other empirical evidence) under the Fair Debt Collection Practices Act would be useful *only* if it included a benchmark measure of consumers' understanding after reading the unelaborated statutory notice plus a statement of the debt, or perhaps after reading the *Bartlett* safe-harbor letter.[3]" *Johnson,* 169 F.3d at 1060–61 (emphasis added). The purpose of the control group is make clear that any consumer confusion is caused by the debt collector's language, not by the statutory language itself. *Johnson,* 169 F.3d at 1060 (noting that "many [unsophisticated] consumers would be confused even if the letters they received contained nothing more than a statement of the debt and the statutory notice"); *Durkin,* 406 F.3d at 420–21. In other words, the issue is not merely the meaning of the letter, but whether the contested language significantly increases the level of confusion over that potentially caused by the Validation Notice itself. *See*

*Johnson,* 169 F.3d at 1060–61. In addition, without a control group to allow the survey's author to control for pre-existing attitudes toward debt collectors, the court has no way of knowing that the respondent gave her answer because of the contested language, rather than because of her negative attitude toward debt collectors.[4]

As Attention points out, the survey proffered by Hernandez does not include a control group that was shown a letter containing only the statutory notice (or the *Bartlett* letter) to serve as a benchmark. It therefore falls short of the significance plaintiff seeks to ascribe to it. The survey, as the record makes clear, was designed and conducted only for the purpose of showing how unsophisticated consumers interpret the language of the letter.[5] Even if the court assumes that the survey accurately reflects consumers' interpretation, the results are not useful without comparative results from a control group. While the plaintiff's expert stated that "chances are" the same observations and conclusion would result even with a control group, his admittedly unsupported opinion, without relevant data, is not useful. In order for a survey to establish debtor confusion stemming from the non-statutory language of a letter, where the letter that is not facially confusing, the Seventh Circuit has indicated that the survey must employ some mechanism to control for baseline consumer confusion. *Durkin,* 406 F.3d at 415; *Johnson,* 169 F.3d at 1060–61.[6] The letter does not appear reason-

---

**3.** In *Bartlett,* the Seventh Circuit provided a sample debt collection letter which, if used by debt collectors, would insulate them from liability like that alleged to exist in this case. *Bartlett,* 128 F.3d 497, 501–02.

**4.** Several participants' responses to questions in Hernandez's survey indicate pre-existing negative attitudes towards debt collectors.

**5.** Both Hernandez, and his expert who created the survey, have stated that the purpose of

the survey was to determine whether, when the "various components of the letter are read together," the letter conveys the overall message that the debt collector would continue its collections even if a dispute was made. Hernandez had also stated that the results of the survey "show what the consumers found the overall message of the letter to be."

**6.** The court also notes that even if the survey had included a control group, it is still significantly flawed. The survey's additional weak-

ably susceptible of a confused reading. The survey evidence is inadequate to demonstrate that the letter's non-statutory language is responsible for any confusion that exists.

For the reasons stated herein, the court grants Attention's motion for summary judgment. Hernandez's motion for class certification is denied as moot.

nesses include its use of questions that take provisions of the letter out of context, its lack of any indicia that the test takers were not influenced by Attention's need to reach a certain outcome, and its small sample size of approximately 40 respondents. *See Borden, Inc. v. Kraft, Inc.*, No. 84 C 5295, 1984 WL 1458, at *13 (N.D.Ill. Sept. 28, 1984) (noting that the use of proper questioning and statistical techniques, measures to ensure objectivity, and a representative sample of respondents are among the considerations courts use to determine the trustworthiness, accuracy and reliability of consumer surveys).