Charlotte V. MUHA, Mary
Cajski, Plaintiffs,

v.

ENCORE RECEIVABLE
MANAGEMENT, INC.,
Defendant.

No. CIV.A. 05–C–0940.

United States District Court,
E.D. Wisconsin.

Sept. 28, 2007.

Ademi & O'Reilly, LLP, Corey Mather and Robert O'Reilly, Cudahy, WI, for Plaintiff.

Hinshaw & Culbertson LLP, Chicago, IL, Corinne C. Heggie and David M. Schultz, for Defendant.

## ORDER

J.P. STADTMUELLER, District Judge.

Plaintiffs Charlotte V. Muha and Mary Cajski allege that defendant Encore Receivable Management, Inc. ("Encore") violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, by sending collection letters that contained the statement, "your original agreement with the above mentioned creditor has been revoked." The plaintiffs contend that the statement is false or misleading because the agreement remained "in effect": even after Encore sent the collection letters, the plaintiffs were obligated to pay their outstanding balances, and they were assessed finance charges and late fees. According to the plaintiffs, their charging privileges were revoked, not their original agreement. The parties have filed cross-motions for summary judgment. In support of their motion, the plaintiffs submit a survey as evidence of consumer confusion, and Encore has filed a motion to bar the survey citing to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The court will grant the defendant's *Daubert* motion and motion for summary judgment.

## BACKGROUND

The parties agree that there are no genuine issues as to any material fact. In September 2004, Muha received a debt collection letter from Encore regarding an alleged debt owed to "Citibank (South Dakota), N.A." In March 2005, Cajski received a debt collection letter from Encore regarding an alleged debt owed to "Chase Bank USA N.A." Both letters state, "your original agreement with the above mentioned creditor has been revoked." The full text of the letters read:

> The above referenced account has been referred to our office for collection of the balance in full. Previous attempts have been made by our client to resolve this debt voluntarily. As of this date, those attempts have not been successful. Therefore, your original agreement with the above mentioned creditor has been revoked.

> Encore Receivable Management, Inc. has been authorized by our client to provide the necessary effort to collect this debt. We recommend that you take advantage of this opportunity to pay the balance in full to prevent further collection activity.

> Please detach the upper portion of this notice and return with your payment in the enclosed envelope.

Note: If payment of the balance has already been made, please notify this office at 888–710–6392 to avoid further communications.

This collection agency is licensed by the Office of the Administrator of the Division of Banking, PO Box 7876, Madison, Wisconsin 53707.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose.

(Compl.Ex. A.)

On September 1, 2005, plaintiffs filed suit on behalf of a putative class, alleging that the statement is false and misleading in violation of 15 U.S.C. § 1692e because "[t]he agreement, including its default terms and other provisions, are still in effect, notwithstanding the fact that the plaintiffs may be in default with respect to the agreement." (Compl.¶ 13.) The plaintiffs argue that only the charging privileges had been revoked and the balance of the credit card agreement remained in effect. The plaintiffs also proffer a survey that purportedly demonstrates consumer confusion regarding the statement. Plaintiffs' counsel drafted the following question: "If a debt collector sent you a letter stating that your agreement with the original creditor has been revoked, what do you feel this statement means?" Survey participants were allowed to choose one of the following responses: a) "There is no longer a contract between the original creditor and me" (selected by 25% of survey participants); b) "I must pay the debt immediately" (10%); c) "I do not have to pay the debt because the creditor revoked the agreement" (16%); d) "I am unsure as to what this means" (49%); and e) "Other" (1%).[1] Plaintiffs' counsel also drafted the four prepared responses. The plaintiffs hired Donald P. Kotecki to administer the telephone survey to 400 Wisconsin adults. Kotecki himself offers no opinion as to whether the participants understood Encore's letter; he is prepared to testify only as to the telephone survey methodology in general.

The plaintiffs moved to certify a class of "(a) all natural persons (b) who were sent a letter stating that their credit card agreement has been revoked, (c) to a Wisconsin address, (d) seeking to collect a debt for personal, family or household purposes, (e) on or after September 1, 2004, (f) that was not returned by the postal service." On September 28, 2006, the court granted plaintiffs' motion and certified the class.

The parties filed cross-motions for summary judgment, and Encore filed a *Daubert* motion to bar the plaintiffs' survey pertaining to alleged consumer confusion. On June 28, 2007, the court ordered the

---

1. Survey participants were asked two other questions: 1) "if a debt collector sent you a letter requesting payment on a debt but also stating that you have 30 days in which to dispute the debt and request verification of the debt, what do you think this letter means?"; and 2) "If a debt collector sent you a letter stating that your agreement with the original creditor has been revoked, do you think that you'll be charged interest and late fees under the agreement?"

plaintiffs to supplement the record and to clarify their position on a number of matters.

## STANDARD OF REVIEW

Summary judgment is proper where the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court construes all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Butera v. Cottey,* 285 F.3d 601, 605 (7th Cir.2002). When parties bring cross-motions for summary judgment, the court should "construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *In re United Air Lines, Inc.,* 453 F.3d 463, 468 (7th Cir.2006). In evaluating a motion for summary judgment, the district court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Albiero v. City of Kankakee,* 246 F.3d 927, 932 (7th Cir.2001).

## ANALYSIS

The issue in this case is whether Encore's statement in its collection letter, "your original agreement with the above mentioned creditor has been revoked," is false or confusing. Section 1692e states, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* The court views the claim through the eyes of an unsophisticated consumer. *McMillan v. Collection Professionals Inc.,* 455 F.3d 754, 758 (7th Cir. 2006). The FDCPA creates an "implied duty to avoid confusing the unsophisticated consumer." *Bartlett v. Heibl,* 128 F.3d 497, 500 (7th Cir.1997). "The inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter." *Id.* at 759. However, the court need not entertain "a plaintiff's bizarre, peculiar, or idiosyncratic interpretation of a collection letter." *Id.* at 758; *see Durkin v. Equifax Check Servs., Inc.,* 406 F.3d 410, 414–15 (7th Cir. 2005); *Pettit v. Retrieval Masters Creditors Bureau, Inc.,* 211 F.3d 1057, 1060 (7th Cir.2000). "[A] plaintiff's anecdotal proclamations of being confused will not suffice: a collection letter cannot be confusing as a matter of law or fact unless a significant fraction of the population would be similarly misled." *Durkin,* 406 F.3d at 415 (internal quotation omitted).

The plaintiffs' theory of their claim is convoluted. The plaintiffs contend that the statement, "your original agreement with the above mentioned creditor has been revoked," is false because "[t]he agreement, including its default terms and other provisions, are still in effect, notwithstanding the fact that the Plaintiffs may be in default with respect to the agreement and have had their charging privileges taken away." (Pls.' Proposed Finding of Fact 13, Jan. 2, 2007.) The sole evidentiary support for this proposed finding of fact, however, is the deposition testimony of Wayne Rowe who stated that the plaintiffs are still obligated to pay their outstanding balances even though their accounts are no longer eligible for additional purchases. (Rowe Dep. 81–82.) In other words, the plaintiffs argue that their credit card agreements are still "in effect" because they remain obligated to pay their outstanding balances even though they may no longer use their cards to make additional purchases.

The court concludes that the statement is neither false nor confusing on its face.

Although the plaintiffs are unable to provide the court with copies of their "original agreements," in the parlance of the credit card industry it goes without saying that the plaintiffs' creditors agreed to provide the plaintiffs with a line of credit in exchange for the plaintiffs' compliance with the terms of repayment. To say that a creditor has "revoked" the agreement is to say that the creditor terminated or cancelled the contract for breach and is no longer willing to extend a line of credit to the credit card holder. In the context of Encore's letter this is readily apparent, even to an unsophisticated consumer, as Encore dutifully explained that the credit card agreement has been revoked following previous unsuccessful attempts by the creditor to resolve the plaintiffs' debt. In other words, an unsophisticated consumer would understand the statement to mean that he may no longer use the credit card issued by the creditor. Terminating performance under a contract, however, does not mean to suggest or imply that the creditor forfeits any claim for damages in the form of repayment or restitution.

The law is consistent with this common sense reading of Encore's letters. Without citation to any legal authority, the plaintiffs equate "revoked" with rescission whereby a contract is deemed to have never existed. However, lawyers, courts, and businessmen have used the terms rescission, termination, and cancellation, in many different senses. *See* Joseph M. Perillo, *Calamari and Perillo on Contracts* 820 (5th ed.2003). "The parties' label is not conclusive; the context determines the legal effect of bringing the contract to an end." *Id.* Under the UCC, for instance, "[u]nless the contrary intention clearly appears, expressions of 'cancellation' or 'rescission' of the contract or the like shall not be construed as a renunciation or discharge of any claim in damages for an antecedent breach." *Id.* "Section 1692e

does not require clarity in all writings.... A rule against trickery differs from a command to use plain English and write at a sixth-grade level." *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC,* 480 F.3d 470, 473 (7th Cir.2007). The statement, "your original agreement with the above mentioned creditor has been revoked," is neither false nor confusing on its face, and the plaintiffs' bizarre interpretation of the phrase is not supported by legal authority or by a common sense reading of Encore's collection letters.

The plaintiffs offer a consumer survey as extrinsic evidence of consumer confusion. However, the plaintiffs' survey is flawed and fails to evidence actual consumer confusion.

■ Under *Daubert,* the court measures the reliability and relevance of an expert's proffered opinion testimony. *See Durkin v. Equifax Check Services, Inc.,* 406 F.3d 410, 420 (7th Cir.2005) (citing *Ammons v. Aramark Unif. Servs., Inc.,* 368 F.3d 809, 816 (7th Cir.2004) ("This framework requires the district court to determine whether (1) the proposed witness would testify to valid scientific, technical, or other specialized knowledge and (2) his testimony will assist the trier of fact.")).

■ The plaintiffs' survey is unreliable and irrelevant for several important reasons. The design of the survey questions is neither scientific nor impartial. Plaintiffs' expert did not design the questions, rather plaintiffs' counsel did. (*See* Def.'s Daubert Mot. Ex. C at 92, 95–96, 99–100, Dec. 29, 2006.) Some courts have expressed wariness when attorneys draft consumer surveys, *see, e.g., Boehringer Ingelheim G.M.B.H. v. Pharmadyne Laboratories,* 532 F.Supp. 1040, 1057–58 (D.N.J. 1980) (citing *Pittsburgh Press Club v. United States,* 579 F.2d 751, 758 (3d Cir. 1978)), and the survey in this case confirms such concern. Plaintiffs' counsel does not describe his experience or qualifications in

designing surveys, so it comes as no surprise that he has not himself been tendered as an expert. Moreover, the plaintiffs expressly concede that their expert, Kotecki, cannot testify with respect to the design of the questions. (*See* Pls.' Response Br. in Opp'n to Def.'s Daubert Mot. at 4 ("Plaintiffs put Mr. Kotecki forward as an expert witness only as to survey methodology.")). If a layperson, like plaintiffs' counsel or any six-year-old for that matter, drafts a survey and an expert flawlessly conducts the survey, is the survey itself scientific or expert evidence? The parties have not addressed the issue, and the court need not determine whether experts must always design the survey questions. *See Simon Property Group L.P. v. mySimon, Inc.*, 104 F.Supp.2d 1033, 1039 (S.D.Ind.2000) ("Consumer survey results must be presented through expert witnesses."). Plaintiffs' counsel's lack of experience or qualifications is only one of several factors that render the survey unreliable and unhelpful to the trier of fact.

The key question in the survey reads: "If a debt collector sent you a letter stating that your agreement with the original creditor has been revoked, what do you feel this statement means?" This question does not mirror the exact language from the collection letters that allegedly confused the plaintiffs ("your original agreement with the above mentioned creditor has been revoked"). More importantly, the question provides none of the surrounding text found in Encore's letter. Encore's letter makes it "perfectly obvious to even the dimmest debtor that the debt collector would very much like him to pay the amount demanded straight off, sparing the debt collector any further expense." *Taylor v. Cavalry Inv., LLC*, 365 F.3d 572, 574–75 (7th Cir.2004). For example, Encore states that it is authorized to collect the plaintiffs' debt; Encore recommends that the plaintiffs "pay the balance in full"; and Encore directs the plaintiffs to "detach the upper portion of this notice and return with your payment in the enclosed envelope." Given this context it is unimaginable that even the most unsophisticated consumer would believe that she did not have to pay the debt because the creditor revoked (i.e., terminated) the agreement. Yet, in response to a question that failed to supply the participants with this context, 16% of the answering respondents believed that they would not have to pay back the debt. Another 10% believed that they must pay back the debt immediately, but those respondents did not have the benefit of reading the portion of Encore's letter that permitted the consumer 30 days to request verification of the debt from Encore. Taking a provision of Encore's letter out of context constitutes a significant flaw because the survey question does not measure the confusion experienced by the recipients of Encore's letters: the survey withholds important information from the survey participants, artificially increasing the level of confusion measured by the survey. *See Hernandez v. Attention, LLC*, 429 F.Supp.2d 912, 918 n. 6 (N.D.Ill. 2005) ("The court also notes that even if the survey had included a control group, it is still significantly flawed. The survey's additional weaknesses include its use of questions that take provisions of the letter out of context, its lack of any indicia that the test takers were not influenced by Attention's need to reach a certain outcome, and its small sample size of approximately 40 respondents.") (citing *Borden, Inc. v. Kraft, Inc.*, 1984 WL 1458, at \*13 (N.D.Ill. Sept. 28, 1984) ("The probative value of surveys and reaction tests depend upon the authorship and wording of questions asked interviewees.")). The failure to supply the survey participants with the full context of the statement at issue renders the survey relatively of no value to the trier of fact.

The most serious flaw of the question, however, are the prepared responses craft-

ed by plaintiffs' counsel. The close-ended question asks participants to interpret, "your agreement with the original creditor has been revoked," by selecting one of four answers: a) "There is no longer a contract between the original creditor and me" (selected by 25% of survey participants); b) "I must pay the debt immediately" (10%); c) "I do not have to pay the debt because the creditor revoked the agreement" (16%); and d) "I am unsure as to what this means" (49%). Which one of these responses is the "correct" answer? Unfortunately, the plaintiffs offer no explanation in any brief tendered to this court, although the plaintiffs (more accurately, their counsel who drafted the question) apparently believe that "your agreement with the original creditor has been revoked" means "I must pay the debt immediately." (*See* Pls.' Br. in Supp. of Summ. J. at 12.)[2] These statements may not be contradictory, but the court does not understand how those two statements mean the same thing. (Additionally, as the court has already noted, Encore's letter notified the plaintiffs that they had 30 days to seek verification of the debt, so it should have been clear to the plaintiffs that they could seek verification before making payment.) Also, the answer, "there is no longer a contract between the original creditor and me," is arguably correct. In this case, the contract was "revoked" or terminated for breach; that is not much different than saying "there is no longer a contract" even if one party continues to assert their claim for damages or restitution. Significantly, plaintiffs' counsel also failed to include Encore's interpretation as one of the possible

answers. In other words, the close-ended question did not give participants the option of indicating that "your agreement with the original creditor has been revoked" means "your charging privileges have been taken away" or "you may no longer use your credit card." Therefore, no matter how participants answered the question, the plaintiffs could claim that the participants were misled or confused. Plaintiffs' counsel drafted three false or awkwardly worded answers and then gave participants a fourth option of declaring their uncertainty. Therefore, it is not surprising that survey participants registered confusion or tried to choose the best answer from an otherwise number of bad choices. The confusion that the survey measured, however, does not measure the confusion that a consumer may experience after reading one of Encore's letters.

Encore points to a number of other flaws with the survey, including the fact that the survey did not target "consumers" specifically, *see Jackson v. National Action Financial Services, Inc.*, 441 F.Supp.2d 877, 879–81 (N.D.Ill.2006), and the survey did not have a control group. *See Hernandez*, 429 F.Supp.2d at 917 ("In order for a survey to establish debtor confusion stemming from the non-statutory language of a letter, where the letter that is not facially confusing, the Seventh Circuit has indicated that the survey must employ some mechanism to control for baseline consumer confusion."). With respect to the target population, this court, like the *Jackson* court, does not find the lack of precision to be "fatal" to the survey. *Jackson*, 441 F.Supp.2d at 881. However, the lack of a control group is

2. In their brief in support of summary judgment, the plaintiffs state: "Based on the survey, 41% of the adult population of Wisconsin erroneously thought that this statement meant that either there was no longer a contract between them and the original creditor, or they do not have to pay the debt because the

creditor had revoked the agreement. (*Id.*) Further, another 49% were unsure as to what that statement meant. (*Id.*) Hence, 90% of the survey population was confused and/or misled by Encore's statement." (*See* Pls.' Br. in Supp. of Summ. J. at 12.)

another significant problem. Plaintiffs' counsel could have designed a survey that showed one group of survey participants an example of Encore's letter and another group an example of Encore's letter that omitted or modified the phrase "your original agreement with the above mentioned creditor has been revoked." *See Johnson v. Revenue Management Corp.,* 169 F.3d 1057, 1060 (7th Cir.1999) ("[I]t will be necessary to show that the additional language of the letters unacceptably increases the level of confusion; many unsophisticated consumers would be confused even if the letters they received contained nothing more than a statement of the debt and the statutory notice.") As the court has already noted, the survey has the more fundamental problem of failing to provide *any* context for the allegedly confusing statement.

Although no survey may be perfect, "[t]he court need not and should not respond reflexively to every criticism by saying it merely 'goes to the weight' of the survey rather than to its admissibility. If the flaws in the proposed survey are of sufficient magnitude, the court may find that the probative value of the survey is substantially outweighed by the prejudice, waste of time, and confusion it will cause at trial." *Simon Property Group L.P. v. mySimon, Inc.,* 104 F.Supp.2d 1033, 1039 (S.D.Ind.2000). "Expert testimony concerning survey results may not be reliable if the survey format does not accurately gauge consumer confusion ...." *Id.* at 1040. In this case, the flaws of the survey are so great that the court must exercise its gate-keeping function under *Daubert* and exclude the survey as unreliable and unhelpful to the trier of fact. The survey was drafted by a non-expert who had an incentive to muddle the wording of the question; the key question did not contain the exact language at issue in this case; any confusion measured by the question could have arisen because the allegedly

confusing statement was lifted out of context from Encore's letters or because participants were forced to choose false or awkwardly worded answers in response to the question. Even if the court did not bar the survey under *Daubert,* however, the survey is so lacking in probative value that the court would be obliged to grant summary judgment in favor of Encore. *Jackson v. Midland Credit Management, Inc.,* 445 F.Supp.2d 1015, 1021 (N.D.Ill. 2006) ("However, this court need not reach the *Daubert* issue as, even considering the plaintiffs' survey information, there is still no evidence in the record to demonstrate a violation of the FDCPA."); *Headen v. Asset Acceptance, LLC,* 458 F.Supp.2d 768, 774 (S.D.Ind.2006) ("If it would be unreasonable to twist or add to the meaning of a communication, as in this case, then even the support of a survey is not enough.").

Accordingly,

**IT IS ORDERED** that defendant's motion for summary judgment be and the same is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that plaintiffs' motion for summary judgment be and the same is hereby **DENIED;**

**IT IS FURTHER ORDERED** that defendant's motion to bar the plaintiffs' survey be and the same is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that plaintiffs' motion to strike defendant's Exhibit G be and the same is hereby **DENIED** as moot;

**IT IS FURTHER ORDERED** that defendant's motion to strike be and the same is hereby **DENIED;**

**IT IS FURTHER ORDERED** that defendant's motions for leave to cite additional authority (docket # 's 107, 111) be and the same is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that defendant's motion to quash be and the same is hereby **DENIED** as moot.

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED** with prejudice.